UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────────

JAMES LOCKRIDGE,

                Plaintiff,

v.                                           Case No. 21-cv-558-pp

CHARLES LARSON,
CANDACE WHITMAN,
and ROGER KRANTZ,

                Defendants.

─────────────────────────────────────────────────

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 11, 13)**

─────────────────────────────────────────────────

      The court allowed plaintiff James Lockridge to proceed on claims against three defendants. Dkt. No. 7. The plaintiff since has asked the court to appoint an attorney to represent him. Dkt. Nos. 11, 13. The plaintiff's first motion is very brief. He says he received three "denials from attys." whom he asked to represent him but does not "know where to send the copies to." Dkt. No. 11. He says he is "in need of legal assistance at once" and asks the court to respond so that he will "know which way to go next." <u>Id.</u>

      In his second motion, the plaintiff adds that he is unable to afford an attorney, asserts that his "imprisonment will greatly limit his ability to litigate," says the issues in his case are complex and will require significant research and posits that having an attorney will "better enable Plaintiff to present evidence and cross examine witnesses" at trial. Dkt. No. 13 at ¶¶1–3. The plaintiff reiterates that he attempted to obtain counsel on his own. <u>Id.</u> at ¶4. This time he attached letters from three law firms that declined his request for legal assistance. Dkt. No. 13-1. The first letter explains that the firm "decided

not to pursue the matter" but notes that "[a]nother attorney might see the same information differently and be perfectly willing to pursue the matter further." Id. at 1. The letter advises the plaintiff to research the limitations period for his claims. Id. The second firm states that "after reviewing your file, we are unfortunately unable to take your case." Id. at 2. Like the first letter, the second advises the plaintiff about the limitations period for his claims. Id. The third letter states that, "after careful consideration," the firm is unable to represent the plaintiff in his "potential legal claims." Id. at 3. It notes the decision is based on the firm's "existing caseload" and is "not expressing any opinion regarding [the] claims or the likelihood of success." Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that

must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

The court finds that the plaintiff has satisfied the first element. He attached to his second motion letters from three firms that he contacted in August 2021 that declined to represent him. The plaintiff did not attach a copy of the letters he sent to the law firms, so the court cannot determine how well he articulated his claims or situation. But two of the letters suggest the merits of the plaintiff's claims played a part in the decision not to take the case. The first firm notes that "[a]nother attorney might see the same information differently and be perfectly willing to pursue the matter further." Dkt. No. 13-1

3
Case 2:21-cv-00558-PP   Filed 05/19/22   Page 3 of 6   Document 17

at 1. The second firm states, "after reviewing your file, we are unfortunately unable to take your case." Id. at 2. Only the third firm declined to take the case because of its caseload. Id. at 3. Nonetheless, the plaintiff satisfied the first element, so the court will consider the second inquiry.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The court finds that the plaintiff has not satisfied the second element for obtaining recruited counsel. The plaintiff explains that he cannot afford an attorney, believes it will be difficult to litigate his case while incarcerated and suggests an attorney could better present his case at trial. While these assertions may be true, they are not unique to this incarcerated plaintiff or this

case. Most, if not all, incarcerated persons would benefit from the assistance of counsel in litigating their cases. But there simply are not enough attorneys willing and able to represent every *pro se* plaintiff who wants one. The plaintiff also asserts that counsel is better equipped to present his case at trial. That also may be true, but this case is in its very early stages. The court has screened the plaintiff's complaint and ordered service on the defendants, who filed an answer. The case has not yet reached the stage where the parties have been required to present evidence to prove or disprove the plaintiff's allegations, which the court accepted as true for purposes of screening. It is possible this case will not reach the trial stage, so it would be inappropriate to appoint an attorney for the purpose of trial at this time.

The allegations in the complaint are straightforward and easy to follow. The plaintiff alleges he was improperly given a top bunk and fell out, suffering injuries that required medical treatment. He says an MRI showed he needed shoulder surgery, but that he had to wait two years for the surgery. He suffered pain and emotional injuries in the interim. These allegations show that the plaintiff has a firm grasp of the events and an understanding of his constitutional claims. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If any of those things occur, it may then be appropriate to recruit counsel to represent the plaintiff. At this early stage, however, the court concludes that the plaintiff has not shown he requires the assistance of counsel to present his case.

The court will deny without prejudice the plaintiff's motions to recruit counsel. That means the plaintiff may refile his motion if he determines he still

needs the assistance of an attorney to litigate his lawsuit. As explained, the plaintiff must satisfy both prongs of the test before the court will attempt to recruit him a lawyer. If the plaintiff believes his situation satisfies both prongs, he may file this motion again. The plaintiff must explain to the court why he is among those *pro se* prisoners most in need of a recruited attorney.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motions to appoint counsel. Dkt. Nos. 11, 13.

Dated in Milwaukee, Wisconsin this 19th day of May, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**